UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

        Plaintiff,

Case No. 17-cr-20366

v.

HON. MARK A. GOLDSMITH

SOLOMON ISRAEL,

        Defendant.

_____/

## OPINION & ORDER
## GRANTING DEFENDANT'S MOTION FOR BOND (Dkt. 15)

Defendant Solomon Israel has been charged in an eighteen-count indictment with wire fraud, bank fraud, mail fraud, aggravated identity theft, possession of forged state securities, and possession of a stolen motor vehicle. See generally 1st Superseding Indictment (Dkt. 21).[1] After a detention hearing was held on May 19, 2017, the magistrate judge ordered Israel detained pending trial because there was no "combination of conditions that would reasonably assure" either the "defendant's appearance" or the "safety of any person and the community." Detention Order at 2 (Dkt. 9).

On June 18, 2017, Israel filed a motion for bond (Dkt. 15), arguing that he is neither a flight risk nor a danger to the community. A hearing was held on July 6, 2017, at which both sides proffered evidence. Following the hearing, this Court ordered both parties to submit

---

[1] At the time Israel filed his motion, he was only charged with mail fraud, aggravated identity theft, and possession of a stolen motor vehicle. See generally Indictment (Dkt. 10). On the same day as the hearing on the motion, the grand jury returned the first superseding indictment, which included the additional counts. Israel was arraigned on the first superseding indictment on July 7, 2017.

1

proposed orders, which they timely did. For the reasons stated below, the Court grants the motion.

## I. BACKGROUND

### A. The Government's Proffered Information

The Government proffered the following items in support of detention: (i) the Pretrial Services Report recommending detention; (ii) evidence that Israel used the identity of Victim T.C. without her authorization to purchase merchandise at a local retail store; (iii) evidence that Israel assumed the identity of Victim R.B.; (iv) evidence that Israel possessed fraudulent car titles and presented those car titles to state authorities in Ohio and Illinois; (v) evidence that Israel fraudulently purchased a 2016 Chevrolet Express van using Victim J.M.'s identity; (vi) evidence that Israel possessed additional items consistent with identity theft and fraud; and (vii) Israel's criminal history. From these sources, the Government claimed that the following facts support detention.

#### 1. Use of T.C.'s Identity to Purchase iPad

The Government has presented evidence that, on January 14, 2015, Israel used a credit card number belonging to T.C. to purchase an iPad at a Meijer store in Northville, Michigan. According to the Government, T.C. did not authorize the use of her credit card for that purpose, and that she reported the unauthorized use to law enforcement upon learning of it.

#### 2. Assumption of R.B.'s Identity

The Government has presented evidence that Israel obtained state identification cards from both Michigan and Ohio under the identity of R.B., who is an individual currently incarcerated in Ohio. The Government has also presented evidence that Israel impersonated R.B.

to engage in a variety of transactions, including financial transactions at a local bank and transaction at various offices of the Ohio Bureau of Motor Vehicles.

### 3. Possession and Use of Fraudulent Car Titles

The Government claims that Israel has retitled at least nine vehicles using fraudulent Michigan title paperwork, proffering that these fraudulent titles, which were presented to officials in Ohio and Illinois as part of title applications in those states, are part of a batch of known blank Michigan titles that were stolen from a Michigan Secretary of State office. According to the Government, the Michigan titles that Israel presented were never actually issued by the State of Michigan.

The Government has further proffered that Israel was impersonating R.B. when he presented the fraudulent titles to Ohio and Illinois authorities. The Government also states that, near the time the fraudulent car titles were presented, cell tower records place Israel's phone in the vicinity of the transactions.

### 4. Use of J.M.'s Identity to Purchase 2016 Chevrolet Express Van

The Government has proffered additional evidence suggesting that one of the cars for which Israel presented a fraudulent title — a 2016 Chevrolet Express Van — was fraudulently purchased by Israel using a stolen identity. That vehicle was purchased in new condition for approximately $80,000 from a North Carolina car dealership in July 2016. The individual who purchased the vehicle alleged to be J.M. According to the Government, the individual purporting to be J.M. corresponded with the dealership via phone, email, and Federal Express, but he did not appear at the dealership in person. When J.M. learned of the purchase, he contacted law enforcement, the financing bank, and the car dealership, notifying them that he did not, in fact, purchase the vehicle.

The Government points to several pieces of evidence to support its conclusion that Israel impersonated J.M. in fraudulently purchasing the van. First, the Government has proffered that the vehicle was delivered to an address in Farmington Hills, Michigan, approximately one mile away from Israel's residence. Second, the Government presented evidence that Israel was involved in a car accident while driving the van less than two weeks after it was delivered.[2] Third, Israel presented a fraudulent Michigan car title to Illinois authorities when registering and titling the van in Illinois. Fourth, as part of that registration and title process, Israel appeared to have provided false information regarding the ownership history of the van, claiming that he purchased it in October 2015 in used condition. The Government claims that, while titling the van in Illinois, Israel also provided a fictitious address for the individual from whom he claimed to have purchased the van. Fifth, Israel apparently did not report the van as stolen or missing after it was impounded by law enforcement, which the Government claims is further evidence of Israel's illicit possession of the vehicle. Finally, the Government argues that other instances of identity theft by Israel demonstrate that Israel had both the opportunity to misuse J.M's identity and the intent to defraud.

### 5. Search of Israel's Residence on Gateway Drive

On May 16, 2017, law enforcement officials executed a federal search warrant at Israel's residence on Gateway Drive in Farmington Hills. According to the Government, several items were seized from the residence that are consistent with identity theft and document fraud, including blank insurance certificates, a copy of a fraudulent Michigan car title, and handwritten notes with personal identifying information of third parties.

### 6. Israel's Flight from Law Enforcement

---

[2] At the time of the accident, police records indicate that the vehicle was identified as being owned by J.M.

According to the Pretrial Services Report, Israel reported to his State of Michigan probation agent on May 17, 2017. The agent informed Israel that she was going to take him into custody on the federal arrest warrant. However, Israel then fled the area before he could be taken into custody.

### 7. Israel's Criminal History

The Government claims that Israel has a significant criminal history that spans over forty years and includes prior convictions for money laundering, transportation in aid of racketing, conspiracy to engage in tax fraud, weapons offenses, drug offenses, and child abuse.

The Government further states that Israel is currently serving a probationary sentence for having engaged in financial transaction device fraud, and he was on probation at the time he is alleged to have committed many of the offenses charged in the first superseding indictment.

### B. Israel's Proffered Information

During the hearing on his motion for bond, Israel proffered evidence that the Northville Police Department investigated the incident at the Meijer store and that no charges were ever filed because there was insufficient evidence of identity theft. Israel proffered that the financial device at issue in that incident was not a credit card but, rather, a gift card.

Israel has proffered that he and R.B. are brothers. He has also proffered evidence to suggest that he did not assume R.B.'s identity; rather, Israel claims that he and R.B. executed a power-of-attorney document, which authorizes Israel to engage in various transactions on behalf of R.B. in Michigan and Ohio.

Regarding the 2016 Chevrolet Express Van, Israel asserts that he is an innocent owner. Israel argues that the transaction documents for the van are suspect, because those documents were notarized in North Carolina and state that a witness was present during the signing.

However, Israel contends that the person who appeared and signed the documents could not have been him because he is black and J.M. is white. Israel also points to the lack of evidence that he ever signed for the vehicle or accepted delivery. Israel further claims that he did not know that the documents he presented to Ohio and Illinois authorities were fraudulent.

Israel claims to have a stable residence and a large family that continues to support him. He further claims that his ex-mother-in-law, who is 79 years old, resides at the residence on Gateway Drive in Farmington Hills, and his residence is in Detroit, Michigan. Israel states that he had been taking care of his ex-mother-in-law prior to his detention.

Israel proffered that he voluntarily appeared on the federal warrant on May 18, 2017. Israel has also provided various letters of support to the Court.

## II. STANDARD OF REVIEW

This Court reviews a magistrate judge's order of detention de novo. United States v. Williams, 948 F. Supp. 692, 693 (E.D. Mich. 1996).

## III. DISCUSSION

Title 18 U.S.C. § 3142 governs the release or detention of a federal defendant pending trial. In general, "[t]he default position of the law . . . is that a defendant should be released pending trial." United States v. Stone, 608 F.3d 939, 945 (6th Cir.2010). However, a defendant may be detained pending trial if a judge "finds that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community[.]" 18 U.S.C. § 3142(e).

In determining whether no condition or combination of conditions will reasonably assure the appearance of the defendant and the safety of the community, the Court must take into account the available information concerning: (i) the nature and circumstances of the offense

6

charged; (ii) the weight of the evidence against the defendant; (iii) the history and characteristics of the defendant; and (iv) the nature and seriousness of the danger posed by the defendant's release.  18 U.S.C. § 3142(g).  The Government bears the burden of persuasion and must prove risk of flight by a preponderance of the evidence, and danger to another person or the community by clear and convincing evidence.  United States v. Hinton, 113 F. App'x 76, 77 (6th Cir. 2004); United States v. Namer, 238 F.3d 425 (6th Cir. 2000) (table) (same).

Applying the proffers to these factors, the Court finds that there is a combination of conditions that will reasonably assure both the appearance of Israel and the safety of the community.

**A.  Nature and Circumstances — 18 U.S.C. § 3142(g)(1)**

Turning to the first factor, the Court finds that it does not weigh in favor of detention. Title 18 U.S.C. § 3142(g)(1) states, in relevant part:

> (g)  The judicial officer shall, in determining whether there are conditions of release that will reasonably assure the appearance of the person as required and the safety of any other person and the community, take into account the available information concerning —
>
> (1)  the nature and circumstances of the offense charged, including whether the offense is a crime of violence, a violation of section 1591, a Federal crime of terrorism, or involves a minor victim or a controlled substance, firearm, explosive, or destructive device.

Here, it is alleged that Israel has engaged in various acts of fraud (wire, bank, and mail), identity theft of several individuals, and possessed forged state title documents and a stolen van. However, none of these offenses constitute a crime of violence.  Nor did any involve a firearm or controlled substance.  They are entirely economic in nature.  Although the Government argues

that these charges demonstrate that Israel possess the tools of flight, this contention is not born out in the proofs.

### B. Weight of the Evidence; History and Characteristics — 18 U.S.C. §§ 3142(g)(2), (g)(3)

Title 18 U.S.C. § 3142(g)(2) instructs this Court to consider "the weight of the evidence against the person." This factor relates to "the weight of the evidence of dangerousness and risk of flight, not the weight of the evidence of the defendant's guilt." United States v Watson, No. 10-cr-30323, 2010 WL 3272934, at *3 (E.D. Mich. Aug. 12, 2010); see also United States v. Hazime, 762 F.2d 34, 37 (6th Cir. 1985) (weight-of-evidence factor "deals with the factors to be considered in determining whether there are conditions which will assure the appearance of the accused and safety of the community").

Section 3142(g)(3) requires the Court to consider the following:

> [T]he history and characteristics of the person, including —
>
>> (A) the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and
>>
>> (B) whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law . . . .

18 U.S.C. § 3142(g)(3).

The Court analyzes these factors in tandem, as many aspects of a defendant's history and characteristics will also evidence whether he or she is a danger to the community and a flight risk.

To begin with, there are no qualms about Israel's physical or mental condition. Nor does the Government argue that Israel has any history of drug or alcohol abuse that warrants detention. Israel claims to have family ties to the area, including his ex-mother-in-law, for whom he had been providing care. The Pretrial Services Report indicates that Israel has twelve of his eighteen children living in the area, as well as four of the children's respective mothers. The Government does not appear to take issue with Israel's purported family ties. There is also no indication that Israel is capable of foreign travel or that he has any connections abroad.

Regarding Israel's criminal history, the Government repeatedly stated that it is significant and spans forty years, including the fact that Israel was on probation at the time these alleged offenses occurred.

What is noteworthy about Israel's criminal history is not its length, but what is notably absent; there is simply no evidence of Israel not appearing at any prior court proceedings. Israel has never been charged with fleeing or eluding, and there is no history of Israel not appearing at his probation appointments. As this particular situation reflects, criminality and punctuality are not mutually exclusive. In fact, the only evidence of flight proffered by the Government was Israel's decision to leave his probation agent's office after she informed him that she was going to take him into custody on the federal arrest warrant. While this conduct is undoubtedly troubling, Israel then voluntarily surrendered himself on the warrant the very next day. What is also remarkable about Israel's criminal history is also the number of cases that were either dismissed or Israel won at trial.

There are two convictions to suggest some dangerousness on the part of Israel that should not be underplayed. One involved the carrying and discharging of a weapon, and the other involved misdemeanor child abuse. Both of these convictions are serious. However, the first

occurred in 1976, when Israel was only 18 years old, and the other occurred in 1995, over twenty years ago. No other information regarding the circumstances of these cases has been presented to the Court. They simply do not suggest that Israel poses any present physical danger to any particular person or the community at large. In fact, the Government does not advance any theory of physical dangerousness predicated on these prior convictions.

There is some confusion regarding Israel's employment. Israel first stated in his motion that he has been gainfully employed at a security company on Gratiot in Detroit. In his reply brief, Israel then stated that he was in the business of buying and selling cars, and that he had a company organized under his and R.B.'s names. The Pretrial Services Report indicates that Israel reported to the U.S. Probation Department that he was either self-employed or working for a tailor from August 2010 to January 2017. However, the report then states that Israel informed the writer of the report that he has not been employed since 2008 in Chicago, Illinois. Although these discrepancies suggest that Israel has not been entirely honest about his employment, the Court can easily require Israel to either maintain employment or, if he is actually unemployed, to actively seek employment as condition of release. See 18 U.S.C. § 3142(c)(1)(B)(ii).

Taken as a whole, these factors do not weigh in favor of detention.

### C. Danger to Any Person or the Community — 18 U.S.C. § 3142(g)(4)

Under the pertinent part of 18 U.S.C. § 3142(g)(4), the Court must consider "the nature and seriousness of the danger to any person or the community that would be posed by the person's release." The Government does not allege, and the Court does not find, that Israel poses a physical danger to any person or the community. Instead, the Government argues that the danger Israel poses if released is purely economic. While it is true that economic harm may qualify as a danger contemplated by the Bail Reform Act, see United States v. Madoff, 586 F.

Supp. 2d 240, 254-253 (S.D.N.Y. 2009), the Court finds that the Government has failed to provide clear and convincing evidence that Israel poses such a danger if he is released. Nonetheless, whatever concern exists for the financial wellbeing of the community can easily be assuaged by instituting a combination of conditions, including a condition requiring location monitoring technology and the posting of a $7,500 bond.

Based on the Court's review of the § 3142(g) factors, the Government has failed to prove by clear and convincing evidence that Israel presents a danger to the community or that no condition or combination of conditions could reasonably assure the appearance of Israel.

## IV.  CONCLUSION

For the reasons stated above, the Court grants Israel's motion for bond (Dkt. 15). An order setting forth the conditions of release will be entered separately.

SO ORDERED.

Dated:  July 20, 2017  
    Detroit, Michigan

s/Mark A. Goldsmith  
MARK A. GOLDSMITH  
United States District Judge

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on July 20, 2017.

s/Karri Sandusky  
Case Manager